**THE BURCHETT LAW FIRM, PC**
Brian L. Burchett (SBN 134757)
605 C Street, Suite 300
San Diego, California 92101
P: (619) 230-8431
F: (619) 639-1125

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Sharon McKeeman,<br><br>        Plaintiff,<br><br>  v.<br><br>United States of America,<br><br>        Defendant. | Case No. **'21CV0815 JLS  DEB**<br><br>**COMPLAINT** |

Plaintiff, Sharon McKeeman alleges as follows:

1.  Plaintiff brings this civil action against the defendant for monetary damages for personal injuries caused by the negligence of medical staff at the Naval Hospital Camp Pendleton, a facility operated by the United States Navy, a department of the United States Department of Defense.  Due to the negligence of the United States of America, through its employees, plaintiff Sharon McKeeman has suffered muscle and nerve damage in her left leg resulting in severe pain, weakness, loss of sensation, and loss of motor control.

**FEDERAL COURT JURISDICTION UNDER FEDERAL TORT CLAIMS ACT**

2.  The claims in this complaint brought against defendant United States of America are authorized by and are brought pursuant to the provisions of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§1346(b) and 2671 *et seq*., and pursuant to 28 U.S.C. §1331. The FTCA vests the Court with exclusive jurisdiction over plaintiff's claims against the United States for the

THE BURCHETT
LAW FIRM, PC
SAN DIEGO

**COMPLAINT**

negligent acts and omissions of its employees, notably in this case Navy physicians Grigory Rozenfeld, M.D., Omar Saeed, M.D., Nicole Deren, M.D., and Ethan Harris, M.D., Garrick Stride, M.D., and junior resident, Rosemary Dizon, M.D.

3. At all relevant times, defendant United States owned and operated Naval Hospital Camp Pendleton, which is located on Marine Corps Base Camp Pendleton, near Oceanside, California in northern San Diego County.

4. At all relevant times, defendant United States, acting through the Navy, held itself out to have the capability to provide medical care for the plaintiff and to provide her with needed medical services. Defendant employed Grigory Rozenfeld, M.D., Omar Saeed, M.D., Nicole Deren, M.D. and Ethan Harris, M.D., Garrick Stride, M.D., and Rosemary Dizon, M.D., each of whom were acting in the course and scope of their employment with defendant at all relevant times.

5. The plaintiff timely filed an administrative claim with the Department of the Navy for personal injury damages under the FTCA (Exhibit 1). The Navy denied the claims on October 29, 2020 (Exhibit 2). Accordingly, Ms. McKeeman exhausted her administrative remedies as required by the FTCA and is authorized by law to file this action at this time against the United States.

**PARTIES**

6. At all relevant times, plaintiff Sharon McKeeman resided in base housing at Marine Corps Base Camp Pendleton in San Diego County.

**VENUE**

7. Venue is proper in this district under 28 U.S.C. § 1402(b) in that plaintiff resides in this judicial district and the acts or omissions complained of occurred in this district.

**ALLEGATIONS OF NEGLIGENCE**

8. Near midnight on July 14, 2018, plaintiff Sharon McKeeman presented to the emergency department at Naval Hospital Camp Pendleton with a 3-day history of left leg pain, swelling, discoloration/bruising, weakness, and with left foot drop. Three days earlier, she had injured both thighs jumping up quickly to prevent her daughter from falling from her crib. Ms. McKeeman collapsed and could not get up from the floor for an hour, and even then could get up

THE BURCHETT
LAW FIRM, PC
SAN DIEGO

only with assistance.

9. The morning after the injury, July 12, 2018, her left thigh was hard to the touch and had turned purple. She could not activate her quad muscles and was having increasing difficulty with walking. She felt severe pain and pins and needles tingling in her left leg and had left foot drop. She saw her civilian primary care physician on July 12 and a civilian sports medicine PA on Friday, July 13. They suspected rhabdomyolysis but did not suspect compartment syndrome at that time. They told her to increase her fluid intake to reduce the rhabdomyolysis symptoms and to go to an ER if her symptoms worsened.

10. Rhabdomyolysis is a condition where a damaged muscle breaks down and releases fluid and muscle tissue fragments. Some of the fluid is absorbed into the blood stream and can harm the kidneys as they try to filter the fluid out of the blood. A dangerous risk of rhabdomyolysis is "compartment syndrome," a condition where the fluid and by-products released by the injured muscle accumulate within the confined space enclosed by the muscle fascia. This fluid accumulation within the space builds pressure that compresses veins and arteries, impeding blood flow and causing ischemic injury. It also compresses nerves, causing nerve damage. Compartment syndrome can cause severe and permanent nerve and muscle injury if not relieved promptly.

11. On Saturday July 14, Ms. McKeeman's symptoms did worsen. Following her civilian physician's recommendation, she went to the Camp Pendleton emergency department that night. Objective findings in triage were left leg numbness, rapid swelling, bruising, inability to walk, with left leg shaking. Camp Pendleton ER physician Grigory Rozenfeld, M.D. examined Ms. McKeeman and found that she could not move her left foot, had decreased sensation in her leg, and muscle twitching. He diagnosed leg weakness and rhabdomyolysis, but was uncertain what to do, so he called the Medical Officer of the Day ("MOD").

12. The Camp Pendleton MOD that night, internist Omar Saeed, M.D., admitted Ms. McKeeman to the Naval Hospital under the care of internal medicine, and he signed-off on the intake evaluation by the internal medicine residents, Drs. Nicole Deren and Ethan Harris. Ms. McKeeman reported increasing pain, swelling, leg weakness, numbness and tingling with difficulty walking. Their physical exam found Ms. McKeeman's left thigh was warm and tender to the touch

with discoloration ("slight reticular erythema").

13. Dr. Saeed ordered a CT scan of her left leg which showed that the main muscle of her left thigh, the rectus femoris, was swollen with fluid ("edematous") in its entirety with additional edema within the surrounding fascia and in her lower leg. The standard of care required that Dr. Saeed order an MRI rather than a CT scan as an MRI would have provided more relevant information concerning Ms. McKeeman's condition.

14. Blood tests revealed her creatinine kinase levels ("CK" levels) were substantially above normal for a woman of her size and age. Creatinine kinase is a by-product of muscle tissue breakdown. Low levels (20-80 units per liter for women) in the blood are normal, but CK levels of 1,000 units or higher are diagnostic for rhabdomyolysis. Ms. McKeeman had been given IV fluids in the ER, which would dilute the blood CK concentration. However, even diluted, her lowest CK levels were more than double the 1,000-unit threshold for diagnosing rhabdomyolysis.

15. These are classic symptoms of compartment syndrome. Considering Ms. McKeeman's presentation, history, imaging results, lab results, and diagnosis of rhabdomyolysis, the standard of care required that her physicians measure the internal pressure in Ms. McKeeman's thigh with a Stryker needle or similar device in order to conclusively rule out compartment syndrome. However, Drs. Rozenfeld, Saeed, Deren, and Harris each chose not to do so. Each decided that Ms. McKeeman did not have compartment syndrome without taking the diagnostic steps necessary to rule it out medically, or even doing a simple Stryker pressure measurement.

16. Rhabdomyolysis and compartment syndrome are conditions of the muscles and related tissue, traditionally within the scope of orthopedics. The standard of care required that the physicians managing Ms. McKeeman's care and treatment consult with appropriate specialists. Even though they were dealing with an orthopedic condition, Drs. Rozenfeld, Saeed, Deren, and Harris each negligently chose not to consult with an orthopedic specialist concerning Ms. McKeeman's left leg condition.

17. Drs. Rozenfeld, Saeed, Deren, and Harris discharged Ms. McKeeman on July 15 without treating her compartment syndrome. Ms. McKeeman's left leg was so impaired at the time of her discharge that she could not get up out of the wheelchair to get into her car.

18. On July 17, 2018, Ms. McKeeman returned to the Camp Pendleton ER. Her left leg symptoms had become worse. She could not extend her left leg at the knee, she had increased tightening in her left leg, and, even with a cane, she could only walk a few feet. The junior resident who evaluated her found "2/5" strength in her left leg, meaning she did not have the strength to overcome gravity to extend her leg. Though still not up to the standard of care, the exam was a bit of an improvement in that Drs. Rozenfeld, Saeed, Deren, and Harris had neglected to perform even this simple strength test on the 15th. On the July 17th, her CK level still was elevated above the rhabdomyolysis threshold, though predictably somewhat lower than on the 15th due to dilution from increased fluid intake.

19. The ER attending on July 17, Dr. Garrick Stride, ordered an MRI, which is what the standard of care required. However, a physician whose name is presently unknown to plaintiff, but who is believed to have been the MOD at the time, negligently countermanded Dr. Stride's order.

20. Again, the standard of care required that the ER doctors check whether the fluid produced from rhabdomyolysis was exerting excessive internal pressure in Ms. McKeeman left thigh. However, the records show that Dr. Stride and junior resident Dr. Rosemary Dizon negligently chose not to evaluate Ms. McKeeman's internal thigh pressures for compartment syndrome, nor did they consult with an orthopedic specialist, before discharging Ms. McKeeman.

21. On July 20, Ms. McKeeman saw her civilian primary care physician with Scripps Clinic Medical Group, who immediately referred her for a thorough evaluation. She was promptly diagnosed with compartment syndrome. However, by this time, it was too late for surgical relief of the internal fluid pressure to reverse the nerve and ischemic damage already done.

22. At all relevant times, defendant, through its employees including but not limited to Grigory Rozenfeld, M.D., Omar Saeed, M.D., Nicole Deren, M.D. and Ethan Harris, M.D., Garrick Stride, M.D., and Rosemary Dizon, M.D., treated Ms. McKeeman for her left leg symptoms, and accordingly defendant and its employees each owed Ms. McKeeman a duty to use such skill, prudence, and diligence in the treatment they provided her as other internal medicine and emergency physicians commonly possess and exercise under similar circumstances.

23 Defendant breached these duties, as described above, in that its employees failed to

conform to the applicable standards of care in testing, obtaining consultations, diagnosing, and treating Ms. McKeeman's compartment syndrome on July 14-15 and July 17.

24. The Camp Pendleton physicians' negligent decisions not to timely and competently test, consult, diagnose, and treat the progressing compartment syndrome on July 14-15 and July 17 resulted in Ms. McKeeman suffering permanent nerve damage in her left leg. She suffers severe left leg weakness which makes it impossible for her to walk without the support of a full-leg rigid brace (for short distances). She is forced to use a wheelchair for longer distances. She has suffered impaired sensation, uncomfortable tingling, and constant nerve pain.

25. As a direct and proximate result of the above-described negligence on the parts of physicians employed by defendant, Sharon McKeeman has suffered injuries that interfere with all aspects of her life as a Marine wife, mother of young children, and professional photographer, writer, and teacher. To date, she has incurred medical expenses in excess of $40,200 to treat her injuries and will incur medical expenses in excess of $548,000 in the future for "smart" braces or prosthetics. She has lost income from employment in the amount of $65,250 because of her disability and will lose income of $72,250 in the future. She has in the past and will continue in the future to suffer pain, physical impairment, inconvenience, and emotional distress, the value of which far exceeds the MICRA general damages cap of $250,000.

**WHEREFORE**, plaintiff Sharon McKeeman prays for judgment against defendant, the United States of America, in the sum of $1,037,988, for the costs of this action, and for all other just and proper relief in the premises.

Dated: April 27, 2021

**THE BURCHETT LAW FIRM, PC**

By: _____
Brian L. Burchett
Attorneys for Plaintiff

6.

**COMPLAINT**

Exhibit 1
SF-95 Claim Form

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|
| Office of the Judge Advocate General<br>Tort Claims Unit Norfolk<br>9620 Maryland Avenue, Suite 205<br>Norfolk, VA 23511-2949 | Sharon McKeeman, by attorney, Brian L. Burchett<br>The Burchett Law Firm, PC<br>605 C Street, Suite 300<br>San Diego, CA 92010 |

| 3. TYPE OF EMPLOYMENT<br>☐ MILITARY  ☒ CIVILIAN | 4. DATE OF BIRTH<br>10/18/1978 | 5. MARITAL STATUS<br>Married | 6. DATE AND DAY OF ACCIDENT<br>07/15/2018  Sunday | 7. TIME (A.M. OR P.M.)<br>3:47 pm |
|---|---|---|---|---|

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

Near midnight on July 14, 2018, claimant Sharon McKeeman (wife of an active duty Marine) presented to the emergency department at Naval Hospital Camp Pendleton with a 3-day history of left leg pain, swelling, discoloration/bruising, and weakness, with left foot drop. She had injured both thighs jumping up quickly to prevent her daughter from falling from her crib. Ms. McKeeman collapsed and could not get up from the floor for an hour, and then only with assistance. Her left thigh was hard to the touch and purple the following day. CONTINUED ON ATTACHED SHEET.

9. PROPERTY DAMAGE

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

Not applicable

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

Not applicable

10. PERSONAL INJURY/WRONGFUL DEATH

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

Left leg muscle and nerve damage resulting in severe pain, weakness, loss of sensation, and loss of motor control.

11. WITNESSES

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| Maj. Jesse McKeeman | 3460 Spanish Way, Carlsbad, CA 92008 |
| Karla Pemberton | 1499 E. Dutcherman Dr., Bloomington, IN 47401 |
| Paxton Miller | PSC 567, Box 7007, FPO AP 96384 |

12. (See instructions on reverse).    AMOUNT OF CLAIM (in dollars)

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
|---|---|---|---|
| 0.00 | 1,037,988 | 0.00 | 1,037,988 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side).<br>[signature] Atty for Claimant | 13b. PHONE NUMBER OF PERSON SIGNING FORM<br>619-230-8431 | 14. DATE OF SIGNATURE<br>07/08/2020 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction
Previous Edition is not Usable

95-109

NSN 7540-00-634-4046

STANDARD FORM 95 (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

| INSURANCE COVERAGE |
|---|
| In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property. |

15. Do you carry accident Insurance? ☐ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number. ☐ No

Not applicable

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible?   ☐ Yes   ☐ No   | 17. If deductible, state amount.

Not applicable | 0.00

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).

Not applicable

19. Do you carry public liability and property damage insurance? ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code). ☐ No

Not applicable

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

**Complete all items - Insert the word NONE where applicable.**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filled by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

*(a)* In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

*(b)* In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

*(c)* In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

*(d)* **Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.**

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
  A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.
C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

STANDARD FORM 95 REV. (2/2007) BACK

## Attorney Authorization

To: Office of the Judge Advocate General\
Tort Claims Unit Norfolk
9620 Maryland Avenue, Suite 205
Norfolk, Virginia 23511-2949

I, __Sharon McKeeman_____, hereby designate and authorize
   (Claimant)

__Brian L. Burchett_____, associated with the law office of
   (Name of Attorney)

__The Burchett Law Firm, PC___ to represent me and continue any
   (Name of Law Firm)

and all claims which have been filed or will be filed arising from:

Medical malpractice - failure to diagnose compartment syndrome - at Naval
   (Description of Incident)
Medical Center Camp Pendleton.

which occurred on July 15, 2018_____.
                (Date of Incident)

Executed this __8th__ day of __July__, 20_20_, at

Carlsbad, California

*Signature of Claimant*
Sharon McKeeman

**BLOCK 8, Continued**

She could not activate her quad muscles and was having increasing difficulty with walking, felt severe pain and pins and needles tingling in her left leg, and had left foot drop. She saw her private primary care physician on July 12 and a sports medicine PA on Friday, July 13. They suspected rhabdomyolysis but did not suspect compartment syndrome at that time. They told her to increase her fluid intake to reduce the rhabdomyolysis symptoms and to go to the ER if her symptoms worsened.

Rhabdomyolysis is a condition where muscles break down and release fluid and muscle tissue fragments. Some of the fluid is absorbed into the blood stream and can harm kidneys as they try to filter it out of the blood. A dangerous risk of rhabdomyolysis is "compartment syndrome," a condition where the fluid and by-products released as the muscle tissue deteriorates accumulate within the confined space of the muscle fascia, building up pressure that cuts off blood flow causing ischemic injury, and compresses nerves causing nerve damage. Compartment syndrome can cause severe nerve and muscle damage if not relieved promptly.

On Saturday July 14, Ms. McKeeman's symptoms did worsen, which brought her to the Camp Pendleton ER that night. Objective findings in triage were left leg numbness, rapid swelling, bruising, inability to walk with left leg trembling. (NHCP Records, p. ER24.) Ms. McKeeman was seen in the ER by staff physician Grigory Rozenfeld, MD, who found Ms. McKeeman could not move her left foot, had decreased sensation, and twitching. (NHCP Records, p. ER26.) He diagnosed leg weakness and rhabdomyolysis, but was uncertain what to do, so he called the Medical Officer of the Day (Naval Hospital Camp Pendleton Records, pp ER24-26.).

The MOD, internist Omar Saeed, M.D. admitted Ms. McKeeman to the Naval Hospital under the care of the internal medicine service, and he signed-off on the intake evaluation by the internal medicine residents, Drs. Nicole Deren and Ethan Harris. Ms. McKeeman reported increasing pain, swelling, leg weakness, numbness and tingling with difficulty walking. (NHCP Records. P. ER14.) Their physical exam found Ms. McKeeman's left thigh was warm and tender to the touch ("TTP," tender to palpation) and somewhat red ("slight reticular erythema"). (NHCP Records, p. ER20.) A CT scan showed that the main muscle of her left thigh, the rectus femoris, was edematous (swollen with fluid) *in its entirety* with additional edema *within the surrounding fascia* and in her lower leg. (NHCP Records, p. ER12.) These are symptoms of compartment syndrome.

Blood tests revealed her creatinine kinase levels ("CK" levels) were substantially above normal for a woman of her size and age. (NHCP Records. p. ER8.) Creatinine kinase is a by-product of muscle tissue breakdown. Low levels in the blood are normal, but CK levels of 1,000 units or higher are diagnostic for rhabdomyolysis. Ms. McKeeman had been given IV fluids in the ER, which would dilute the blood CK concentration. (NHCP Records p. ER19.) However, even diluted, her lowest CK levels were more than double the 1,000 unit threshold for diagnosing rhabdomyolysis.

With Ms. McKeeman's presentation, imaging results, lab results, history, and diagnosis of rhabdomyolysis, the standard of care required that her physicians measure the internal pressure in Ms. McKeeman's thigh with a Stryker needle or similar device in order to rule out compartment syndrome. However, Drs. Rozenfeld, Saeed, Deren, and Harris each chose not to do so, each decided that Ms. McKeeman did not have compartment syndrome without doing the tests to medically rule it out or even doing the simple Stryker pressure measurement, and Dr. Saeed discharged her on July 15. Though Dr. Saeed claimed she was "ambulating appropriately" at discharge (NHCP Records, p. ER 10.), Ms. McKeeman will testify that she could ambulate, poorly, **only** with support, and other witnesses will testify that Ms. McKeeman could not even get up out of the wheelchair to get into her car at discharge, let alone "ambulate appropriately."

On July 17, 2018, she went back to the Camp Pendleton ER. Her physical symptoms were worse. She could not extend her left leg at the knee, had increased tightening in her left leg, and, even with a cane, could only ambulate slightly. (NHCP Records, p. ER 6.) The junior resident who evaluated her found "2/5" strength in her left leg, meaning she did not have the strength to overcome gravity to extend her leg. (NHCP Records, p. ER 7.) It should be noted that Drs. Rozenfeld, Saeed, Deren, and Harris neglected even to perform a simple strength test on the 15th. On the 17th, her CK level was still elevated above the rhabdomyolysis diagnostic threshold, though somewhat lower than on the 15th, predictably, due to dilution from increased fluid intake. (NHCP Records, p. ER 7.)

As before, the standard of care mandated that the ER doctors check whether the fluid from rhabdomyolysis was exerting excessive internal pressure in her left thigh. Nevertheless, the records show that the ER attending, Dr. Garrick Stride, and junior resident, Dr. Rosemary Dizon, negligently chose not to evaluate her internal thigh pressures for compartment syndrome before discharging her.

On July 20, she was seen by her civilian primary care physician with Scripps Clinic Medical Group, who immediately referred her for a thorough evaluation. She was promptly diagnosed with compartment syndrome. However, by this time, it was too late for surgical relief of the internal fluid pressure in her thigh muscles to undo the damage already done.

The Camp Pendleton physicians' negligent decisions not to promptly assess and treat the progressing compartment syndrome on July 14-15 and July 17 resulted in Ms. McKeeman suffering permanent nerve damage in her left leg. She suffers severe left leg weakness which makes it impossible for her to walk without the support of a full leg rigid brace (for short distances). Otherwise she is confined to a wheelchair. She has suffered impaired sensation, uncomfortable tingling, and constant nerve pain. These symptoms are so severe that she is contemplating amputation of her left leg at the mid-thigh level. (Scripps Rehab Notes, pp. 18-21.)

Her malpractice-related injuries have interfered with all aspects of her life as a Marine wife, mother of young children, and professional photographer, writer, and teacher. She has incurred medical expenses to treat her injuries and will incur substantial medical expenses in the future for "smart" braces or prosthetics. She has lost income from employment because of her disability and will continue to lose income in the future.

Her pain and suffering damages far exceed the California cap on such damages of $250,000.

Her economic damages are as follows:

### PAST MEDICAL EXPENSES

| | |
|---|---|
| Medical expenses paid by Tri Care (Downloaded EOBs attached) | $30,500 |
| Co-Payments | $ 2,500 |
| Adaptive equipment purch'd by Claimant | $ 2,700 |
| Handcrank cycle | $ 4,500 |
| **TOTAL PAST MEDICAL EXPENSES** | **$40,200** |

### FUTURE MEDICAL EXPENSES

| | |
|---|---|
| Ottobock leg brace | $105,000 |
| Functional electrical stimulation brace | $ 35,000 |
| Neuro-electrical stimulator | $ 12,000 |
| Wheelchair service and replacement | $ 1,353 |
| Brace replacement (3 times over 41-year life expectancy) | $315,000 |
| Physical therapy (6 times per year @$125 until age 65) | $ 18,000 |
| Miscellaneous injury-related care (3 OVs per year @$95 over 41-year life expectancy) | $ 11,685 |
| Hospitalizations (2 hospitalization @ $25,000 over life expectancy) | $ 50,000 |
| **TOTAL FUTURE MEDCIAL EXPENSES** | **$548,038** |

### LOST INCOME

| YEAR | ACTUAL INCOME | NET LOSS |
|---|---|---|
| **PAST LOSSES** | | |
| Pre-injury average baseline income | $24,000 | |
| 2018 | — $ 4,500 | $28,500 |
| 2019 | —$500 | $24,500 |
| 2020 | —$250 | $12,250 |
| **TOTAL PAST LOSS** | | **$65,250** |
| | | |
| **FUTURE ESTIMATED LOSSES** | | |
| 2020 | —$250 | $12,250 |
| 2021 | $4,000 | $20,000 |
| 2022 | $8,000 | $16,000 |
| 2023 | $12,000 | $12,000 |

3

| | | |
|---|---|---|
| 2024 | $16,000 | $8,000 |
| 2025 | $20,000 | $4,000 |
| 2024 | $24,000 | <u>$   00</u> |
| **TOTAL FUTURE ESTIMATED LOSSES** | | **$72,250** |

4

Medical record copies omitted.

Exhibit 2
Claim Denial



**DEPARTMENT OF THE NAVY**
OFFICE OF THE JUDGE ADVOCATE GENERAL
TORT CLAIMS UNIT NORFOLK
9620 MARYLAND AVENUE SUITE 205
NORFOLK VA 23511-2949

IN REPLY REFER TO

5890
Ser J201510
October 29, 2020

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

BRIAN L BURCHETT ESQ
THE BURCHETT LAW FIRM PC
605 C STRET SUITE 300
SAN DIEGO CA 92010

Dear Mr. Burchchett:

SUBJECT:   CLAIMS OF SHARON MCKEEMAN AND JESSE MCKEEMAN, OUR MASTEE FILE NO. J201510

This responds to your clients' administrative claims in the amount of $1,287,988.00 for damages allegedly resulting from medical care provided to Sharon McKeeman at Naval Hospital Camp Pendleton on July 15, 2018. Your clients' claims were analyzed under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2401(b), and 2671-2680. Our investigation has determined the United States is not liable under the FTCA for the damages claimed.

The United States is liable under the FTCA when the negligence or wrongful act of a Federal employee proximately causes injury. A review of your client's medical records show that the applicable standard of care was met by each of her Navy health care providers. The damages alleged did not result from any negligent act or omission on the part of an employee of the United States. Accordingly, your clients' claims are denied. If you do not agree with this decision, be advised you have six months from the date of mailing of this letter to file suit in the appropriate Federal district court.

If you have any questions, please contact me by phone at (757) 341-4538 or email at kristina.schlieter@navy.mil.

Sincerely,

KRISTINA L. SCHLIETER
Tort Claims Attorney